Lee A. Cirsch (SBN 227668)
Lee.Cirsch@capstonelawyers.com
Robert K. Friedl (SBN 134947)
Robert.Friedl@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
Trisha.Monesi@capstonelawyers.com
**CAPSTONE LAW APC**
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:   (310) 556-4811
Facsimile:   (310) 943-0396

Attorneys for Plaintiffs Reginald Whitley
and Joann Whitley

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINALD WHITLEY and JOANN WHITLEY, individually, and on behalf of other members of the general public similarly situated,<br><br>        Plaintiffs,<br><br>     v.<br><br>WHIRLPOOL CORPORATION, a Delaware CORPORATION,<br><br>        Defendant. | Case No.:  8:16-cv-01704-CJC-(DFM)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Date:       March 20, 2017<br>Time:      1:30 p.m.<br>Ctrm:     9B<br><br>Complaint Filed:   September 13, 2016<br>Trial Date:       None set |

**TABLE OF CONTENTS**

I.  INTRODUCTION ......................................................................................1

II.  THE STANDARD FOR RULING ON A RULE 12(b)(6)
    MOTION TO DISMISS ........................................................................2

III.  ARGUMENT ..........................................................................................2

    A.  Plaintiffs Have Adequately Alleged the Self-Cleaning Defect
    Under Rule 8 and That They Experienced the Symptoms of
    the Defect ........................................................................................2

    B.  Plaintiffs Adequately Plead a Claim for Breach of Implied
    Warranty Pursuant to the Song Beverly Act ...........................................4

        1.  Plaintiffs Adequately Plead a Claim for Breach of
        the Implied Warranty Under Song-Beverly Because
        They Have Alleged a Defect that Existed at the
        Time of Sale ..........................................................................5

        2.  Plaintiffs Adequately Plead That Their Oven Was
        Unfit for Its Ordinary Purpose ................................................6

    C.  Plaintiffs Adequately Plead Breach of Magnuson-Moss
    Warranties ..................................................................................10

    D.  Plaintiffs' UCL and CLRA Claims Adequately Plead
    Whirlpool's Presale Knowledge and Active Concealment of
    the Self-Cleaning Defect .................................................................11

        1.  The Heightened Pleading Standard for Pleading
        "Fraud" Under Rule 9(b) Does Not Apply to
        Allegations of Whirlpool's Presale Knowledge of
        the Self-Cleaning Defect ........................................................11

        2.  Plaintiffs Adequately Plead Whirlpool's Presale
        Knowledge of the Self-Cleaning Defect ..................................12

|  |  | 3. | Plaintiffs Adequately Plead a Material Omission .............. 15 |

3.   Plaintiffs Adequately Plead a Material Omission .............. 15

4.   Whirlpool Does Not Dispute That Plaintiffs
     Adequately Plead That It Actively Concealed the
     Self-Cleaning Defect ......................................... 17

5.   Plaintiffs Adequately Plead Violations of the
     "Unlawful" and "Unfair" Prongs of the UCL .................... 18

E.   Plaintiffs Adequately Plead a Claim for Unjust Enrichment ............. 19

IV.   CONCLUSION............................................................20

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).......................................2, 11

*Baggett v. Hewlett-Packard Co*., 582 F. Supp. 2d 1261 (C.D. Cal. 2007)..............12

*Bell Atlantic Corp. v.Twombley*, 550 U.S. 554 (2007) ...........................................2

*Burdt v. Whirlpool Corp*., 2015 WL 4647929 (N.D. Cal. Aug. 5. 2015)..............7, 8

*Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) .......................10

*Comerica Bank v. McDonald*, 2006 WL 3365599 (N.D. Cal. Nov. 20,
   2006).......................................................................................................................11

*Daniel v. Ford Motor Company*, 806 F. 3d 1217 (9th Cir. 2015) ........................4, 6

*Decker v. Mazda Motor of America, Inc.*, 2011 WL 5101705
   (C.D. Cal. Oct. 24, 2011) ...............................................................................15, 16

*Digley-Adler Group LLC v. Mercedez-Benz U.S.A., LLC*,
   2015 WL 5138080 (N.D. Cal. Sept. 1, 2015)......................................................8

*Ehrlich v. BMW of N. America*, 801 F. Supp. 2d 908 (C.D. Cal. 2010)..............13, 16

*Falco v. Nissan*, 2013 U.S. Dist. LEXIS 147060  (C.D. Cal. Oct. 10, 2013) ..........19

*Falk v. GMC*, 496 F. Supp. 2d 1095 (2007)................................................. 12, 13, 16

*Feldman v. Mercedes-Benz USA LLC*, 2012 WL 6596830
   (D.N.J. Dec. 18, 2012) ............................................................................................13

*Galitski v. Samsung Telecomm. Am., LLC*, 2015 WL 5319802
   (N.D. Texas, Sept. 11, 2015) ................................................................................7

*Grodzitsky v. Am. Honda Motor Co., Inc.*, 2013 WL 2631326
   (C.D. Cal. June 12, 2013...........................................................................................15

*Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987 (N.D. Cal. 2013) ....................13, 19

*In re Carrier IQ, Inc.*, 2015 WL 274054 (N.D. Cal. Jan. 21, 2015)..........................8

*In re HP Inkjet Printer Litig.*, 2006 WL 563048 (N.D. Cal., Mar. 7, 2006)............20

*In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801 (S.D. Ohio 2012) ................13

*In re Toyota Motor Corp. Unintended Acceleration Mktg.*,
   754 F. Supp. 2d 1145 (C.D. Cal. 2010) ...........................................12, 18

*Kas v. Mercedes-Benz USA, LLC*, 2011 WL5248299
   (C.D. Cal. Oct. 31, 2011) ......................................................................5

*Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929
   (C.D. Cal. 2012) ...................................................................... 4, 18, 19

*Keilholtz v. Superior Fireplace Co.*, 2009 WL 839076 (N.D. Cal. 2009) ..............19

*Kent v. Hewlett-Packard Co.*, 2010 WL 2681767 (N.D. Cal. July 6, 2010).............9

*MacDonald v. Ford Motor Company*, 37 F. Supp. 3d 1087 (2014)........... 13, 14, 15

*Marsikian v. Mercedes-Benz USA, LLC*, 2009 WL 8379784
   (C.D. Cal. May 4, 2009) .................................................................17, 18

*Mediacom Southeast LLC v. BellSouth Telecommunications, Inc.*,
   672 F.3d 396 (6th Cir. 2012) .................................................................2

*Nelson v. Nissan North America, Inc.*, 894 F. Supp. 2d 558 (D.N.J. 2012).............13

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) .......................................11

*Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082 (N.D. Cal. 2006) ..................19

*Rescuecom Corp. v. Google Inc.*, 562 F.3d 123 (2nd Cir. 2009)..............................2

*Shum v. Intel Corp.*, 499 F.3d 1272 (9th Cir. 2007) ..................................................19

*Smith v. L.G. Elecs. U.S.A., Inc.*, 2014 WL 989742
   (N.D. Cal. Mar. 11, 2014)........................................................................6

*Stickrath v. Globalstar, Inc.*, 2008 WL 344209 (N.D. Cal. Feb. 6, 2008) .........17, 18

*T&M Solar & Air Conditioning Inc. v. Lenox*, 83 F.Supp.3d 855
   (N.D. Cal. 2016) ................................................................................9, 10

*Wilson v. Hewlett Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) ................. 13, 15, 16

STATE CASES

*Bank of the West v. Superior Court*, 2 Cal. 4th 1254 (1992).....................................19

*Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538 (2014)................................7, 8

*Collins v. EMachines, Inc.*, 202 Cal. App. 4th 249 (2011).........................................16

*Donlen v. Ford Motor Co.*, 217 Cal. App. 4th 138 (2013).........................................5

*Hirsch v. Bank of Am.*, 107 Cal. App. 4th 708 (2003)...............................................19

*Lauriedale Assocs., Ltd. v. Wilson*, 7 Cal.App.4th 1439 (1992)...............................19

*McBride v. Boughton*, 123 Cal. App. 4th 379 (2004)................................................19

*Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297 (2009) ...............................5, 6, 7

*State Farm Fire & Casualty v. Sup*. Ct., 45 Cal. App. 4th 1093 (1996) .................18

**FEDERAL STATUTES**

15 U.S.C. §§ 2301 *et seq*. (Magnuson-Moss Warranty Act (MMWA)) .................10

Fed. R. Civ. P. 8(a)(2) ...............................................................................................2

Fed. R. Civ. P. 9(b) ............................................................................................ 11, 12, 13

Fed. R. Civ. P. 12(b)(6) .............................................................................................2

**STATE STATUTES**

Cal. Bus. & Prof. Code §§ 17200 *et seq*. (Unfair Comp. Law (UCL)) ..............18, 19

Cal. Civ. Code §§ 1750 *et seq.* (Cons. Legal Remedies Act (CLRA)) ....... 17, 18, 19

Cal. Civ. Code §§ 1790-1795.7 (Song-Beverly Consumer Warranty Act) ..... *passim*

Cal. Civ. Code § 1791.1(a) ..........................................................................................4

OPPOSITION TO MOTION TO DISMISS CLASS ACTION COMPLAINT

## I.     INTRODUCTION

Plaintiffs Reginald Whitley and Joann Whitley ("Plaintiffs") purchased a self-cleaning wall-mounted oven manufactured by Defendant Whirlpool Corporation ("Whirlpool") that overheated and broke when they used the self-cleaning feature of the oven.  After they paid to fix the oven, they used the self-cleaning feature a second time.  Again, it overheated and broke, with the oven door in a permanent locked position, and emitted an extreme burning smell.  Their allegations show that Whirlpool knew of this defect before Plaintiffs purchased their oven.  The oven never should have been sold without disclosing the defect.

Whirlpool challenges Plaintiffs' complaint with a number of arguments, none of which have merit.  Whirlpool describes Plaintiffs' allegations as "vague and conclusory."  They are not.  Whirlpool argues that it did not breach an implied warranty because the defect – which existed when the oven was sold – was not triggered until Plaintiffs first used the self-cleaning feature over one year after purchase.  The contention is contrary to California and Ninth Circuit law.  Whirlpool next argues that a self-cleaning oven that overheats when its self-cleaning feature is used is "merchantable" as long as it can "cook food."  Again, that assertion is contrary to the law.

Whirlpool also argues that Plaintiffs have failed to allege its presale knowledge of the defect.  Its argument ignores well settled law.  Plaintiffs have alleged at least three (3) sources of pre-sale knowledge that, when taken together, as they must, plausibly alleges Whirlpool's presale knowledge of the defect under prevailing law.  Moreover, Whirlpool had a *duty* to disclose the defect.  The defect is a material defect – reasonable consumers would not purchase the Class Ovens (or would pay less) if they knew of it.  It is also a safety defect and a defect that Whirlpool actively concealed.

Plaintiffs respectfully submit that Whirlpool's motion to dismiss should be denied in full.

OPPOSITION TO MOTION TO DISMISS CLASS ACTION COMPLAINT

## II.   THE STANDARD FOR RULING ON A RULE 12(b)(6) MOTION TO DISMISS

Pursuant to Rule 12(b)(6), a plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombley*, 550 U.S. 554, 570 (2007).  A claim has "facial plausibility" if the plaintiff pleads facts that "allow […] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  In considering the motion, the court must "accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally."  *Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 127 (2nd Cir. 2009); *Mediacom Southeast LLC v. BellSouth Telecommunications, Inc.*, 672 F3d 396, 400 (6th Cir. 2012).

## III.   ARGUMENT

### A.   Plaintiffs Have Adequately Alleged the Self-Cleaning Defect Under Rule 8 and That They Experienced the Symptoms of the Defect[1]

Fed. R. Civ. P. 8(a)(2) only requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Here, Plaintiff alleges the Class Ovens suffer from the following defect:

> Plaintiffs are informed and believe and based thereon allege that the Class Ovens contain a design defect wherein, due to the use of inappropriate and inadequate heat-resistant and heat-regulating internal components, the Class Ovens' thermostat, thermal fuses, control panel, motherboard, door glass, door latch, and/or other internal components short-circuit, overheat, or otherwise break during normal operation of the High Temp Self-Cleaning Cycle (the "Self-Cleaning Defect").  As a result, the ovens often remain locked and completely non-functional.

---

[1] Whirlpool claims in its Introduction that Plaintiffs' complaint alleges "an unspecified design defect" in the Class Ovens.  (Mot. p. 1.)  Although Whirlpool *does not* present any argument that Plaintiffs' defect allegations fail to meet basic pleading standards putting it on notice of the defect, it is worth pointing out that Plaintiffs' defect allegations are not "unspecified."  Furthermore, Plaintiffs allege they personally experienced the symptoms of this specific defect.

(Compl. ¶¶ 2, 36.)  Thus, Plaintiffs have alleged a specific defect – the Self-Cleaning Defect.  In addition to pleading the existence of the Self-Cleaning Defect, Plaintiffs have pleaded its cause:

> On information and belief, the Self-Cleaning Defect is a result of insufficient heat resistance in the Class Ovens and their components.  The defect is caused by Defendant's failure to equip the Class Ovens with appropriate heat-resistant insulation, properly functioning thermostats, thermo-regulators, and cooling fans, and adequate heat-resistant internal components that can withstand the extreme heat produced during the High Temp Self-Cleaning Cycle.

(Compl. ¶ 3.)

Plaintiffs have furthermore alleged that all the Class Ovens are equipped with a High Temp Self-Cleaning Cycle that operates at very high temperatures and that the Class Ovens equipped with the High Temp Self-Cleaning Cycle have the same or substantially identical internal components, and the Self-Cleaning Defect is the same for all Class Ovens.  (Compl. ¶¶ 5, 6.)  Moreover, "[t]he alleged Self-Cleaning Defect was inherent in each Class Oven and was present in each Class Oven at the time of sale."  (Compl. ¶¶ 12, 39.)

Plaintiffs have themselves experienced the symptoms of the Self-Cleaning Defect.  The first time they used the High Temp Self-Cleaning Cycle the oven's glass door cracked and cost them $119.00 to replace.  (Compl. ¶ 24.)  Plaintiffs further allege:

> Then, on or around July 17, 2016, Plaintiffs used the High Temp Self-Cleaning Cycle again.  Once initiated, the oven emitted an extreme burning smell.  Ms. Whitley attempted to prematurely end the self-cleaning cycle but was unable to do so, as the oven controls were unresponsive and the oven door remained locked.  At the completion of the self-cleaning cycle, the oven door remained locked and the oven lights and controls were inoperative.  Plaintiffs' oven remains without power and requires additional repairs or complete replacement in order to regain functionality.

(Compl. ¶ 25.)

Thus, Plaintiffs' complaint does not allege "an unspecified design defect" in

1    the Class Ovens.  It adequately alleges the Self-Cleaning Defect, that all Class

2    Ovens have the defect and that Plaintiffs themselves experienced the symptoms of

3    the defect.

4        **B.**      **Plaintiffs Adequately Plead a Claim for Breach of Implied Warranty**

5                 **Pursuant to the Song Beverly Act**

6        The Song-Beverly Act was enacted "to regulate warranties and strengthen

7    consumer remedies for breaches of warranty."  *Keegan v. Am. Honda Motor Co., Inc.*,

8    838 F. Supp. 2d 929, 944 (C.D. Cal. 2012).  Under the Act, an implied warranty of

9    merchantability guarantees that "consumer goods meet each of the following:  (1) Pass

10   without objection in the trade under the contract description; (2) Are fit for the ordinary

11   purposes for which such goods are used; (3) Are adequately contained, packaged, and

12   labeled; (4) Conform to the promises or affirmations of fact made on the container or

13   label."  Cal. Civ. Code § 1791.1(a).  "[T]he implied warranty of merchantability set

14   forth in § 1791.1(a) requires… that a [product] be reasonably suited for ordinary use.  It

15   need not be perfect in every detail so long as it provides for a minimum level of

16   quality." *Keegan*, 838 F. Supp. 2d at 945 (internal citation omitted).  The Song-Beverly

17   Act must be construed "so as to implement the legislative intent to expand consumer

18   protection and remedies."  *Daniel v. Ford Motor Company*, 806 F. 3d 1217, 1223 (9th

19   Cir. 2015).

20       Whirlpool proffers two brief arguments for dismissal of this claim:  "First,

21   Plaintiffs do not allege that the problems with their oven manifested within the one year

22   durational limit.  Second, Plaintiffs do not allege that their oven was unfit for its

23   ordinary purpose of cooking food." (Mot. p. 4.)  Both arguments are contrary to law.

24   A defect is not required to manifest during the duration of an implied warranty in order

25   to state a claim.  Moreover, Plaintiffs' adequately allege that that the Self-Cleaning

26   Defect renders the Class Ovens unfit for its ordinary purpose because it can self-

27   destruct when the self-cleaning feature is operated.

28

1.   **Plaintiffs Adequately Plead a Claim for Breach of the Implied Warranty Under Song-Beverly Because They Have Alleged a Defect that Existed at the Time of Sale**

Whirlpool's first argument is that to plead a breach of implied warranty, Plaintiffs are required to allege facts that show that the Self-Cleaning Defect "manifested within the one-year durational limit" of the implied warranty.  (Mot. pp. 4-5.)  Whirlpool's argument is contrary to California law and Ninth Circuit authority.

As discussed above, Plaintiffs have pled "[t]he alleged Self-Cleaning Defect was inherent in each Class Oven and was present in each Class Oven at the time of sale." (Compl. ¶¶ 12, 39.)  This defect was not discoverable at the time of sale because purchasers of Class Ovens would not have operated the oven and its self-cleaning feature prior to buying the oven.  "The implied warranty of merchantability may be breached by a latent defect undiscoverable at the time of sale.  [Citations.]"  *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1304 (2009).  The *Mexia* court went on to explain:

> Indeed, "[u]ndisclosed latent defects ... are the very evil that the implied warranty of merchantability was designed to remedy." (*Willis Mining, Inc. v. Noggle* (1998) 235 Ga.App. 747, 749 [509 S.E.2d 731].) In the case of a latent defect, a product is rendered unmerchantable, and the warranty of merchantability is breached, by the existence of the unseen defect, not by its subsequent discovery.

*Mexia*, 174 Cal. App. 4th at 1305.  *See also Donlen v. Ford Motor Co.*, 217 Cal. App. 4th 138, 148 (2013) (citing *Mexia*, 174 Cal. App. 4th at 1308) ("that a defect first appears after a warranty has expired does not necessarily mean the defect did not exist when the product was purchased."); *See also Kas v. Mercedes-Benz USA, LLC*, 2011 WL 5248299, at *2 (C.D. Cal. Oct. 31, 2011) (citing *Mexia*, 174 Cal. App. 4th at 1305–06) (finding unmerchantability outside of one-year implied warranty period where Plaintiff alleged defect existed at the time of sale).

That reasoning has been unequivocally adopted by the Ninth Circuit Court

1    of Appeals. *See Daniel*, 806 F. 3d at 1222-1223 (finding that "***Mexia's… rule***

2    that §1791.1 'does not create a deadline for discovering latent defects or for giving

3    notice to the seller,' (citation omitted), ***must be followed***.") (emphasis added).

4           Whirlpool does not mention, let alone address, this controlling California

5    and Ninth Circuit authority.  Nor does it present any authority to support its

6    position that the Self-Cleaning Defect had to manifest within the implied warranty

7    limitation period.  (*See* Motn. pp. 4-5.)  Instead, Whirlpool relies on *Smith v. L.G.*

8    *Elecs. U.S.A., Inc.*, 2014 WL 989742 (N.D. Cal. Mar. 11, 2014) to argue, in a

9    footnote, that an implied warranty claim alleging a "latent" defect cannot be based

10   "on events that occurred more than a year after the date of purchase."  (Motn. p. 5

11   n.4.)  *Smith* does not stand for that broad proposition and, in any event, it predates

12   *Daniel.*

13          In *Smith*, the Plaintiff alleged that a washing machine that she purchased in

14   November 2011 had problems "from the beginning" when it engaged an extra-high

15   speed spin cycle.  Over a year later, as part of a recall, the manufacturer "fixed"

16   the problem by capping the spin speed.  It is apparently *that* event (capping the

17   spin speed) that the Plaintiff in *Smith* allege violated the implied warranty.  ("Thus,

18   plaintiff alleges, the 'upgrade' rendered the machines useless for the purpose for

19   which they were advertised. Cplt ¶¶ 26–31."  *Smith*, 2014 WL 989742 at *2.)

20          *Smith* does not stand for the proposition for which it is proffered:  that an

21   implied warranty claim cannot be based on a latent defect that existed at the time

22   of sale but manifests only after the one-year implied warranty period.  If *Smith* did

23   stand for that proposition it would be contrary to controlling California and Ninth

24   Circuit authority in *Mexia* and *Daniel.*

25          **2.     Plaintiffs Adequately Plead That Their Oven Was Unfit for Its**

26                  **Ordinary Purpose**

27          A core test of merchantability under the Song–Beverly Consumer Warranty

28   Act is fitness for the ordinary purpose for which such goods are used.  Such fitness

is shown if the product is in safe condition and substantially free of defects. *Mexia*, 174 Cal. App. 4th at 1303. "Whether a product is unfit for its ordinary purpose is a question of fact for the jury." *Galitski v. Samsung Telecomm. Am., LLC*, 2015 WL 5319802 *10 (N.D. Texas, Sept. 11, 2015) (citing *Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538, 1547 (2014) as modified on denial of reh'g (July 16, 2014) (jury could infer that defect causing vehicle sunroof to spontaneously open and close renders vehicle unsafe and unfit for its ordinary purpose)).

Plaintiffs have alleged that Whirlpool breached the implied warranty of merchantability under the Song-Beverly Consumer Warranty Act because the Class Ovens "are not fit for their ordinary purpose of providing a function[ing] oven with a self-cleaning feature because, inter alia, the Class Ovens suffered from an inherent defect at the time of sale and thereafter." (Cmplt. ¶ 96.) The defect, Plaintiffs allege, "causes unsafe conditions, including, oven failure, broken oven glass, unstable electrical circuits, and an increased risk of fire. These conditions present a safety hazard because they severely affect the safe operation of the oven and can lead to burns, smoke inhalation, cuts and house fires." (Cmplt. ¶ 96.)

Whirlpool argues that Plaintiffs' implied warranty claim fails because the "ordinary purpose" of Plaintiffs' oven is "cooking food" and Plaintiffs cannot allege that their oven was unfit for that purpose since they used it for cooking food for 16 months. (Mot. p. 5, citing *Burdt v. Whirlpool Corp.*, 2015 WL 4647929 (N.D. Cal. Aug. 5. 2015.) This argument fails for several reasons.

First, the question of whether Plaintiffs' oven is fit for its ordinary purpose is not answered by whether Plaintiffs' oven can be used for cooking food. "In defining a product's core functionality, a court should not seek to reduce a product to its most basic, bare minimum purpose, but rather should take a common sense view informed by reasonable consumers' expectations about the function of the type of product in a general sense." *In re Carrier IQ, Inc.*, 2015 WL 274054, at

OPPOSITION TO MOTION TO DISMISS CLASS ACTION COMPLAINT

*44 (N.D. Cal. Jan. 21, 2015).  This concept is in keeping with the many automobile cases that recognize that a merchantable vehicle under the statute requires more than the mere capability of "just getting from point 'A' to point 'B.'"  *Brand*, 226 Cal. App. 4th at 1547 (holding that sunroof defect breached implied warranty).  By analogy, the test of merchantability of an oven is not simply whether it can be used to cook food.

Applying the proper test, it is inconceivable that it would be in keeping with ordinary consumer standards that a new oven with a self-cleaning feature would self-destruct from overheating when the self-cleaning feature is utilized.  *C.f. Digley-Adler Group LLC v. Mercedez-Benz U.S.A., LLC*, 2015 WL 5138080 (N.D. Cal. Sept. 1, 2015).[2]  A self-cleaning oven that overheats dangerously and breaks when the self-cleaning feature is used is not merchantable.

Second, the *Burdt* case, upon which Whirlpool heavily relies, does not stand for the proposition that any oven that can cook food is merchantable.  (Motn. p. 5.)  In *Burdt*, the plaintiff alleged that his oven was unfit for its intended purpose because one of three oven racks collapsed on one *single* occasion when plaintiff's wife used it to cook food.  Critically, he did not allege that the other two oven racks were *defective* or *unsafe*.  *Burdt*, 2015 WL 4647929 at *1, 5.  Citing these facts, the *Burdt* court found that the plaintiff could still use the oven in a safe manner by using the other two oven racks.  *Id.* at *5.  The court distinguished these facts from other cases where courts found the implied warranty breached, stating "[t]he ability to operate the product safely distinguishes the present matter from Plaintiff's cited cases."  *Id.*  Unlike in *Burdt*, Plaintiffs cannot safely operate the self-cleaning feature of their oven.  Each time they did, it overheated dangerously

---

[2] "It seems inconceivable to this Court that it would be in keeping with ordinary consumer expectations that a new cargo van should regularly drench its occupants and their property, resulting in repeated damage and requiring extended periods of disuse. … Defendant's motion to dismiss this claim is DENIED."

1   and broke.  (Cmplt. ¶¶ 24-25.)  Nor can Plaintiffs use it to cook food.  The last

2   time they used the self-cleaning feature, the oven emitted an extreme burning

3   smell.  At the completion of the self-cleaning cycle, the oven door remained

4   locked and the oven lights and controls were inoperative.  (Cmplt. ¶ 25.)

5          Whirlpool cannot reasonably dispute that an oven that is rendered locked

6   and inoperative due to a defect cannot cook food and therefore is not merchantable

7   by any definition.  Yet, it attempts to do so by arguing that having to fix the oven

8   in order to use it is a mere "inconvenience" that does not render the oven unfit for

9   its ordinary purpose.  (Mot p. 6 n.5., citing *Kent v. Hewlett-Packard Co.*, 2010 WL

10  2681767 (N.D. Cal. July 6, 2010).)  In *Kent*, the court held that a computer that

11  routinely "locks-up" may be inconvenient, but that the plaintiffs had failed to

12  allege sufficient additional facts to show that their computers were unusable or

13  failed to serve their ordinary purpose.  *Kent*, 2010 WL 2681767 at *4.  Unlike the

14  computers in *Kent*, when Plaintiffs' oven overheated and broke, they could not

15  "reboot" their oven and go on using it.  The Self Cleaning Defect has rendered

16  Plaintiffs' oven permanently unusable and it would be no mere "inconvenience" to

17  repair it.

18         Finally, Whirlpool argues that "a product is 'generally considered

19  merchantable even if certain functions' of the product 'do not operate as

20  promised.'"  (Mot. p. 6 citing *T&M Solar & Air Conditioning Inc. v. Lenox*, 83

21  F.Supp.3d 855, 875 (N.D. Cal. 2016).)[3]  In fact, *T&M Solar* supports Plaintiffs'

22  position because it illustrates that a product's "ordinary purpose" takes into

23  consideration how the product is supposed to function.

24         In *T&M Solar*, the plaintiffs purchased from the defendant solar panel

25  ───────────────
26         [3] The portion of *T&M Solar* cited by Whirlpool merely notes that "where a car
    can provide safe, reliable transportation, it is generally considered merchantable even if
27  certain functions of the car—like a navigation or entertainment system—do not operate
    as promised."  *Id.*, quotation and citation omitted.  The court then *distinguished* the case
28  before it from those types of cases.

systems that were supposed to be installed through their HVAC systems and alleged that their ordinary and intended use was to be operated through HVAC systems instead of through electrical panels.  However, it turned out that the solar panels systems could not be installed through the HVAC systems as promised. Defendant argued that the solar panel systems were still merchantable because they "can still operate as a functioning solar panel system through an electrical panel, just like traditional solar panel systems."  The court found plaintiffs stated a claim for breach of the implied warranty of merchantability because the "FAC allegations establish that the ordinary and intended purpose of the systems was [] to function as solar panel systems through customer's air conditioning systems instead of through the electrical panel." *T&M Solar*, 83 F.Supp.3d at 878.

As in *T&M Solar*, Plaintiffs' complaint defines the ordinary and intended purpose of Plaintiffs' oven ("a functioning oven with a self-cleaning feature") with respect to how it is supposed to function.  (Cmplt. ¶ 96.)  Whirlpool's argument that Plaintiffs' oven is merchantable even though the self-cleaning feature is subject to a dangerous safety defect is not supported by *T&M Solar*.

Accordingly, Plaintiffs adequately plead a claim for breach of the implied warranty of merchantability.

**C.      Plaintiffs Adequately Plead Breach of Magnuson-Moss Warranties**

Plaintiffs' Magnuson-Moss Warranty Act claim for breach of implied warranty is predicated on the Song Beverly breach of warranty claim. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) (finding that claims under the Magnuson–Moss Act stand or fall with express and implied warranty claims under state law, as the Act borrows state law causes of action.)  As illustrated above, Plaintiffs have sufficiently alleged a Song-Beverly claim, and their Mag-Moss claims should likewise be sustained.

**D.     Plaintiffs' UCL and CLRA Claims Adequately Plead Whirlpool's Presale Knowledge and Active Concealment of the Self-Cleaning Defect**

**1.     The Heightened Pleading Standard for Pleading "Fraud" Under Rule 9(b) Does Not Apply to Allegations of Whirlpool's Presale Knowledge of the Self-Cleaning Defect**

Whirlpool attempts to argue that Plaintiffs have not sufficiently pleaded its pre-sale knowledge of the Self-Cleaning Defect by intimating to the Court that the heightened pleading standards of Rule 9(b) apply to allegations of its knowledge. (Mot. p. 7:8-10.) They do not. Whirlpool's knowledge of the defect is *not* subject to the heightened pleading standards of Fed. R. Civ. P. 9(b) ("knowledge, and other conditions of a person's mind may be alleged generally"). As such, while the circumstances of a claim grounded in fraud must be pled with particularity, a party's knowledge or other state of mind is not subject to the heightened pleading standard and "may be averred generally." *Iqbal*, 556 U.S. at 686-87 (state of mind need not be pled under 9(b)'s "elevated pleading standard," but under the "less rigid . . . strictures of Rule 8").

To the extent Rule 9(b) applies to Plaintiffs' omission claims, the requirement is relaxed when the defendant necessarily has full information about the facts or when the facts lie more within the defendant's knowledge. *Comerica Bank v. McDonald*, 2006 WL 3365599, *3 (N.D. Cal. Nov. 20, 2006). This is because where, as here, only the defendant knows what it knew and when, the plaintiff cannot be expected to have personal knowledge of those facts. *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

Similarly, less stringency is applied in fraud by omission or fraud by concealment claims, which "can succeedwithout the same level of specificity required by a normal fraud claim." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d at 1189

(C.D. Cal. 2010) (citing *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007)).  This is because "[r]equiring a plaintiff to identify (or suffer dismissal) the precise time, place, and content of an event that (by definition) did not occur would effectively gut state laws prohibiting fraud by omission."  *Id.* (citations omitted).

Since an elevated pleading standard does not apply, it is clear that Plaintiffs have adequately pleaded Whirlpool's presale knowledge of the Self-Cleaning Defect.

### 2.    Plaintiffs Adequately Plead Whirlpool's Presale Knowledge of the Self-Cleaning Defect

There are four circumstances in which a duty to disclose arises: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact."  *See*, *e.g.*, *Falk v. GMC*, 496 F. Supp. 2d 1095, 1097 (2007).  Plaintiffs plead that Whirlpool had exclusive knowledge of the Self-Cleaning Defect and actively concealed the defect. (Compl. ¶¶ 44-53.)

As discussed above, Whirlpool's knowledge of the defect is not subject to the heightened pleading standards of Fed. R. Civ. P. 9(b) ("knowledge, and other conditions of a person's mind may be alleged generally").  Here, Plaintiffs allege:

> 45.    Plaintiffs are informed and believe and based thereon allege that before Plaintiffs purchased their Class Oven, and since at least January of 2000, Whirlpool knew about the Self-Cleaning Defect through sources not available to consumers, including pre-release testing data, early consumer complaints about the Self-Cleaning Defects to Whirlpool and its service technicians, testing conducted in response to those complaints, high failure rates, and replacement part sales data, among other internal sources of aggregate information about the problem.

Courts routinely find such allegations of exclusive knowledge sufficient under

1   Rule 9(b).  *Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 998 (N.D. Cal. 2013)

2   (finding substantially similar allegations sufficient); *Feldman v. Mercedes-Benz USA*

3   *LLC*, 2012 WL 6596830 *11 (D.N.J. Dec. 18, 2012) (same); *Nelson v. Nissan North*

4   *America, Inc.*, 894 F. Supp. 2d 558, 563 & 568 (D.N.J. 2012) (same); *In re Porsche*

5   *Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 816 (S.D. Ohio 2012) (same); *Falk*, 496 F.

6   Supp. 2d at 1096-97 (defendant's access to similar pre-release data sufficient to plead

7   exclusive knowledge); *Ehrlich v. BMW of N. America*, 801 F. Supp. 2d 908 (C.D. Cal.

8   2010) (same).

9          Whirlpool relies on *Wilson v. Hewlett Packard Co.*, 668 F.3d 1136 (9th Cir.

10  2012) to argue that its access to aggregate information and data alleged in paragraph 45

11  is too speculative to support an inference of presale knowledge.  (Mot. p. 9.)

12  Whirlpool's reliance on *Wilson* is misplaced.  As explained in *MacDonald v. Ford*

13  *Motor Company*, 37 F. Supp. 3d 1087 (2014), when courts have considered virtually

14  identical allegations, what is dispositive is whether the Plaintiffs provided additional

15  information supporting their allegations.  *MacDonald* at 1095-1096 (2014).[4]  Here,

16  Plaintiffs have done so.  Plaintiffs allege:

17             Hundreds of purchasers of the Class Ovens have
18             experienced problems with the High Temp Self-Cleaning
               Cycle.  Complaints from consumers to Whirlpool's social
19             media website, Consumer Reports, and other online
               complaint forums demonstrate that the defect is widespread
20             and dangerous and that it manifests without warning.  The
               complaints also indicate Defendant's awareness of the
21             problems with the Self-Cleaning Cycle and how potentially
               dangerous the defective condition is for consumers.  The
22             following are some safety complaints relating to the Self-
               Cleaning Defect (spelling and grammar mistakes remain as
23             found in the original) (ConsumerAffairs.com, *Consumer*
               *Complaints and Reviews for Whirlpool Ranges & Ovens,*
24             https://www.consumeraffairs.com/homeowners/whirlpool_ra
               nges.html (Aug. 18, 2016):

25  (Compl. ¶ 42.)

26         Following this allegation are *thirty-eight* actual consumer complaints posted

27  _____

       [4] *Wilson* does not hold otherwise.  *Wilson* at 1147 citing *Falk*, 496 F. Supp. 2d at
28  1096-97.

1  on ConsumerAffairs.com dating back to 2011 which are offered in support of the

2  allegation.  (Compl. pp. 9-31.)  In addition, Plaintiffs allege two Technical Service

3  Pointers ("TSP's"), both of which predate Plaintiffs' purchase of their oven,

4  allegedly concern the Self-Cleaning Defect and thus evidence Whirlpool's pre-sale

5  knowledge of the defect.[5]  (Compl. ¶¶ 46-47.)

6      Clearly, Whirlpool knew of the Self-Cleaning Defect prior to Plaintiffs' purchase

7  of their oven.  In response, Whirlpool's argues that Plaintiffs' allegations are

8  insufficient because Plaintiffs do not allege the TSPs and consumer complaints involve

9  the same model as Plaintiffs' oven or the same components.  (Mot. pp. 7-8.)  Plaintiffs

10  are not required to do so.

11      First, Plaintiffs have not pleaded that the Self-Cleaning Defect is limited to their

12  oven's model.  They have pleaded that the Class Ovens consist of "any Whirlpool or

13  KitchenAid wall ovens equipped with the High Temp Self-Cleaning Cycle."

14  Therefore, Whirlpool's sources of knowledge regarding the Self-Cleaning Defect is not

15  logically limited to TSPs and complaints regarding Plaintiffs' specific oven model.

16      Second, Whirlpool fails to appreciate that all of Plaintiffs' allegations of sources

17  of pre-sale knowledge must be viewed in the light most favorable to Plaintiffs.

18  Therefore, if they permit a reasonable inference of presale knowledge, the fact that

19  Whirlpool "is able to identify competing inferences from the same set of facts does not

20  mean that Plaintiffs' claims should be dismissed." *MacDonald*, 37 F. Supp. 3d at 1093.

21  For example, *MacDonald* observed that TSBs ("Technical Service Bulletins")

22  concerning earlier models of the plaintiff's vehicle could lead to a plausible inference

23  that Ford was "generally aware of problems" with the coolant pump at issue in that

24  case.  *Id.*  In addition, "TSBs issued after Plaintiffs' purchases also plausibly give rise

25  to the inference that Ford knew of the issue prior to their issuance."  *MacDonald*, at

26  1094, emphasis added.  Here, the TSPs alleged by Plaintiff evidence attempts to fix a

27  ─────────────────
[5] Plaintiffs purchased their oven on or around September 13, 2013.  (Compl.

28  ¶ 17.)

1   problem with the Class Ovens breaking as a result of heat during the self-cleaning
2   cycle. (Compl. ¶¶ 46, 47.) A plausible inference that can be drawn from the TSP
3   allegations is that Whirlpool was generally aware of the Self-Cleaning Defect prior to
4   Plaintiffs' purchase. Therefore, they support a conclusion that Whirlpool had pre-sale
5   knowledge of the defect.

6       Plaintiffs' allegations of consumer complaints also help support an inference of
7   Whirlpool's pre-sale knowledge. As explained in *MacDonald*, while "[s]ome courts
8   have expressed doubt that customer complaints *in and of themselves* adequately support
9   an inference that a manufacturer was aware of a defect … such complaints may help
10  support other evidence of knowledge." *MacDonald*, 37 F. Supp. 3d at1094-1094
11  (discussing *Wilson*, 668 F.3d at 147 and *Grodzitsky v. Am. Honda Motor Co., Inc.*,
12  2013 WL 2631326 (C.D. Cal. June 12, 2013) Accordingly, "[a] Court will consider the
13  allegations concerning consumer complaints together with the other allegations in
14  determining whether Plaintiffs have met their pleading burden." *MacDonald* at 1095.

15      In sum, Plaintiffs' knowledge allegations are to be viewed in the light most
16  favorable to Plaintiffs and are not viewed in isolation, but together with all the
17  knowledge allegations, including the "pre-release testing data" allegations, TCP
18  allegations and consumer complaint allegations. Together, these allegations plausibly
19  alleged Whirlpool's pre-sale knowledge of the Self-Cleaning Defect.

20              **3.      Plaintiffs Adequately Plead a Material Omission**

21      Defendant argues that manufacturers have a duty to disclose defects that
22  manifest outside the warranty period only if there has been an affirmative
23  misrepresentation or the defect poses a safety risk. (Mot. p. 10.) That is a
24  mischaracterization of the law. A correct statement of the law is that unreasonable
25  safety risks at any time give rise to a duty to disclose, while non-safety defects only
26  give rise to a duty to disclose when they occur during the warranty period. *See, e.g.*,
27  *Decker v. Mazda Motor of America, Inc.*, 2011 WL 5101705 at *4 (C.D. Cal. Oct. 24,
28  2011):

> A proper reading of *Daugherty* reveals a two-step duty to disclose analysis. First, a manufacturer has a duty to disclose any defects that fall within the warranty period, whether relating to safety or to costly repairs, that would have caused the consumer to not purchase the car if they had been disclosed. Second, a manufacturer also has a duty to disclose safety issues that fall outside of the warranty period."

"In order for non-disclosed information to be material, a Plaintiff must show that had the omitted information been disclosed, one would have been aware of it and behaved differently." *Falk*, 496 F. Supp. 2d at 1095.

Courts have found several categories of facts to be material. First, an unreasonable safety risk is per se material. *See Falk*, 496 F. Supp. at 1096 (speedometer defect material).

Second, non-safety defects arising during the express warranty period can be material where a consumer's reasonable expectation regarding a consumer good is different than what was received. *See Wilson*, 668 F.3d at 1142 & n.1 (9th Cir. 2012); *Collins v. EMachines, Inc*., 202 Cal. App. 4th 249, 258 (2011) (non-safety computer defect arising during the warranty period material); *Decker*, 2011 WL 5101705 ("[T]he average consumer would expect the manufacturer to disclose significant defects of any nature that arise within the warranty period.") (emphasis added).

Here, the defect is material because no reasonable consumer would have purchased the oven had they known that the oven would stop working once they used the self-cleaning feature. Whirlpool had a duty to disclose the defect to consumers at the time of sale because it existed at that time and only needed a purchaser to use the self-cleaning feature in order for the oven to break.

Notwithstanding, Whirlpool had a duty to disclose the Self-Cleaning Defect because it clearly also poses a safety risk. Plaintiffs only need to allege a risk to safety, not that any person was actually physically injured. *See Decker*, 2011 WL 5101705 at *4 ("Plaintiff's safety risk allegations just need to be plausible to survive."); *Ehrlich*, 801 F. Supp. 2d at 1918 ("The Court is not persuaded by *Tietsworth* or BMW's arguments that Plaintiff must plead that consumers have been injured by the alleged

1   unreasonable safety risk."); *Marsikian v. Mercedes-Benz USA*, 2009 WL 8379784, *6

2   (C.D. Cal. May 4, 2009) (refusing to dismiss CLRA claim based on "plausible prospect

3   of a safety problem").

4          Here, Plaintiffs allege "[t]he Self-Cleaning Defect causes unsafe conditions,

5   including, oven failure, broken oven glass, unstable electrical circuits, and an increased

6   risk of fire.  These conditions present a safety hazard because they severely affect the

7   safe operation of the oven and can lead to burns, smoke inhalation, cuts and house

8   fires." (Compl. ¶ 41.)  Plaintiffs' own oven "emitted an extreme burning smell" when

9   they operated the self-cleaning function.  (Compl. ¶ 41.)  Plaintiffs are not required to

10  allege that anyone else was burned, or experienced injury or a house fire, in order to

11  plausible allege that the Class Ovens present an unreasonable safety hazard.  (*See* Mot.

12  p. 11.)

13              **4.**      **Whirlpool Does Not Dispute That Plaintiffs Adequately Plead**

14                        **That It Actively Concealed the Self-Cleaning Defect**

15         Plaintiffs also allege that Whirlpool has actively concealed the Self-Cleaning

16  Defect.  (Compl. ¶¶ 50-53.)  Whirlpool does not challenge those allegations.  (*See* Mot.

17  pp. 10-11.)  This is because Whirlpool cannot dispute that such allegations are

18  sufficient to plead active concealment and, therefore, a duty to disclose the defect.

19  *Stickrath v. Globalstar, Inc.*, 2008 WL 344209 (N.D. Cal. Feb. 6, 2008) ("Plaintiffs'

20  allegations that Defendant knew of material defects but did not disclose them to

21  potential customers are sufficient to allege a duty to disclose under an active

22  concealment theory.")

23         Moreover, Plaintiffs have alleged more than non-disclosure in support of their

24  active concealment theory.  Plaintiffs allege:  "[w]hen consumers present the Class

25  Ovens to an authorized Whirlpool representative for repair of the oven, rather than

26  repair the problem under warranty, Whirlpool dealers conduct repairs that merely mask

27  the defect, often replacing defective parts with equally defective parts." (Compl. ¶ 52.)

28         These types of allegations are clearly sufficient to allege active concealment.

1   *See*, *e.g.*, *Marsikian*, 2009 WL 8379784 at *6 ("Defendant provided only a temporary

2   fix, thereby concealing the full extent of the problem"); *Toyota Motor Corp.*

3   *Unintended Acceleration Litig.*, 754 F. Supp. 2d 1145, 1192 (C.D. Cal. 2010) (finding

4   allegations that manufacturer denied existence of defect adequate to demonstrate active

5   concealment); *Stickrath v. Globalstar, Inc.*, 2008 WL 344209 (N.D. Cal. Feb. 6, 2008)

6   ("Plaintiffs' allegations that Defendant knew of material defects but did not disclose

7   them to potential customers are sufficient to allege a duty to disclose under an active

8   concealment theory").

9       Accordingly, Plaintiffs have adequately pleaded that Whirlpool knew of the

10  Self-Cleaning Defect and breached its duty to disclose the defect to Plaintiffs.

11      **5.    Plaintiffs Adequately Plead Violations of the "Unlawful" and**

12      **"Unfair" Prongs of the UCL**

13      The UCL prohibits unlawful, or unfair, or fraudulent business practices.

14  *State Farm Fire & Casualty v. Sup*. Ct., 45 Cal. App. 4th 1093, 1102 (1996).  As

15  discussed above, Whirlpool has violated the UCL's fraudulent prong by failing to

16  disclose material facts to consumers under the two independent bases for a

17  disclosure duty in California: exclusive knowledge and active concealment of

18  material facts.  As is already established, Whirlpool has also violated the unlawful

19  prong of the UCL by violating the CLRA,implied warranty law under the Song-

20  Beverly Act, and the MMWA.

21      Whirlpool's business practice is also "unfair."  "To determine if a business

22  practice is unfair, the court must review the evidence from both parties and weigh

23  any legitimate utility of the practice against the harm to consumers; this decision

24  cannot usually be made on demurrer." *Id.*; *see* also *Keegan*, 838 F. Supp. 2d at

25  938-39 (noting "broad" scope and "sweeping" coverage of UCL and finding

26  Honda violated unfair prong of UCL by selling vehicles with alignment defect).

27  Whirlpool has violated the unfair prong of the UCL by, among other things,

28  actively concealing the safety defect.  *See* also *Falco v. Nissan*, 2013 U.S. Dist.

1    LEXIS 147060 \*29 (C.D. Cal. Oct. 10, 2013) (finding well-pled CLRA and Song-

2    Beverly claims violate UCL's unlawful prong); *Ho*, 931 F. Supp. 2d at 1000

3    (finding unfair prong violated by failure to disclose safety defects); *Keegan*, 838 F.

4    Supp. 2d at 944 fn.50 (finding UCL's "unlawful" and "unfair" prongs violated

5    based on well-pled CLRA claim.).

6         **E.**     **Plaintiffs Adequately Plead a Claim for Unjust Enrichment**

7         Whirlpool contends that Plaintiffs' claim for unjust enrichment should be

8    dismissed because "[u]nder California law there is no standalone cause of action for

9    unjust enrichment." (Mot. p. 13.) However, as the Ninth Circuit has acknowledged,

10    "[u]nder California law, unjust enrichment claims can exist as a separate cause of

11    action when 'the claim is grounded in equitable principles of restitution.'" *Shum v. Intel*

12    *Corp.*, 499 F.3d 1272, 1279 (9th Cir. 2007) (quoting *Hirsch v. Bank of Am.*, 107 Cal.

13    App. 4th 708, 721-22 (2003)).

14         There is no dispute that restitution is permitted under the UCL. *Bank of the West*

15    *v. Superior Court*, 2 Cal. 4th 1254 (1992). Furthermore, the Song-Beverly Act states

16    that its remedies are not exclusive. Cal. Civ. Code § 1790.4 (West) ("The remedies

17    provided by this chapter are cumulative and shall not be construed as restricting any

18    remedy that is otherwise available.") Given that Plaintiffs have stated valid causes of

19    action under his UCL and Song-Beverly, Whirlpool's request for dismissal of

20    Plaintiffs' unjust enrichment claim should be denied. *See Keilholtz v. Superior*

21    *Fireplace Co*., 2009 WL 839076, at \*\*4-5 (N.D. Cal. 2009). *See also Nordberg v.*

22    *Trilegiant Corp*., 445 F. Supp. 2d 1082, 1100 (N.D. Cal. 2006) (noting that "although

23    labeled 'unjust enrichment,' the causes of action could be understood as claims for

24    restitution" in the context of a claim under the UCL) (relying on *McBride v. Boughton*,

25    123 Cal. App. 4th 379 (2004) and *Lauriedale Assocs., Ltd. v. Wilson*, 7 Cal. App. 4th

26    1439, 1448 (1992)).

27         Whirlpool next argues that "Plaintiffs' unjust enrichment claim fails as a matter

28    of law because the written warranty that accompanied Plaintiffs' oven governs their

1   relationship with Whirlpool." (Mot. p. 13.)  More specifically, Whirlpool states "the
2   written warranty that accompanied Plaintiffs' oven is a valid contract that establishes
3   the parties' rights and obligations with respect to the subject matter of the unjust
4   enrichment claim – namely the Plaintiffs' oven." (Mot. p. 14, referring to the Limited
5   Warranty, Haines Decl. Ex. 1 (Dkt. 17-2.)  Whirlpool, however, does not cite any law,
6   let alone California law, holding that a manufacturer's express warranty contained in a
7   users' manual provided with an allegedly defective product bars a consumer-
8   purchaser's unjust enrichment claim.

9       Here, Plaintiffs purchased their oven from Pacific Sales in Orange County,
10  California.  (Compl. ¶ 17.)  Whirlpool's express warranty was contained on page 22 of
11  a "Use and Care Guide" included with the oven.  (Haines Decl. ¶¶ 8-10.)  Accordingly,
12  Whirlpool's written warranty was not contained in the contract of sale between the
13  Plaintiffs and the retail seller, but instead was created independently in Whirlpool's
14  "Use and Care Guide." *In re HP Inkjet Printer Litig.*, 2006 WL 563048 at *5 (N.D.
15  Cal., Mar. 7, 2006).

16      The express warranty at issue here is not a binding agreement between the
17  parties as to Plaintiffs' claim for unjust enrichment.  There has been no bargain-for-
18  exchange between Plaintiffs and Whirlpool.  Rather, the bargain-for-exchange occurred
19  between Plaintiffs and the retail seller of the oven.  Further, Plaintiffs received the
20  written warranty subsequent to their purchases of the oven. Thus, the warranty itself
21  was not specifically contracted for and cannot, by any means, limit plaintiffs' right to
22  recover for unjust enrichment. *In re HP Inkjet Printer Litig.*, 2006 WL 563048 at *7.
23  Even if Plaintiffs had alleged breach of the express warranty that accompanied the oven
24  (which they have not), they could have alleged unjust enrichment in the alternative. *Id.*
25  Accordingly, Whirlpool's motion to dismiss Plaintiffs' unjust enrichment claim should
26  be denied.

27  **IV.   CONCLUSION**

28      For the foregoing reasons, Whirlpool's motion to dismiss should be denied.

Dated:  February 13, 2017                    Respectfully submitted,

                                             Capstone Law APC


                                       By: /s/ Robert K. Friedl
                                             Lee A. Cirsch
                                             Robert K. Friedl
                                             Trisha K. Monesi

                                             Attorneys for Plaintiffs Reginald Whitley and
                                             Joann Whitley

OPPOSITION TO MOTION TO DISMISS CLASS ACTION COMPLAINT