**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **REGINALD WHITLEY and JOANN WHITLEY, individually and on behalf of other members of the general public similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**WHIRLPOOL CORPORATION,**<br><br>**Defendant.** | **Case No.: SACV 16-01704-CJC(DFMx)**<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS IN SUBSTANTIAL PART** |

## I. INTRODUCTION

On September 13, 2016, Plaintiffs Reginald Whitley and Joann Whitley brought this lawsuit on behalf of themselves and other members of the general public similarly situated against Defendant Whirlpool Corporation ("Whirlpool"). (Dkt. 1 [hereinafter

"Compl."].) The Complaint alleges five causes of action: (1) violations of California's Consumers Legal Remedies Act, California Civil Code §§ 1750 *et seq.*, (2) violations of California Business & Professions Code §§ 17200 *et seq.*, (3) breach of implied warranty pursuant to the Song-Beverly Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1 *et seq.*, (4) breach of implied warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, and (5) unjust enrichment. (*Id.* ¶¶ 62–119.)

Before the Court is Whirlpool's motion to dismiss. (Dkt. 17 [hereinafter "Mot."].) For the following reasons, the motion is DENIED IN SUBSTANTIAL PART.[1]

## II. BACKGROUND

Plaintiffs' Complaint alleges the following facts. On September 10, 2013, they purchased a new KitchenAid[2] Single Wall Oven from an authorized Whirlpool retailer in Orange County, California. (Compl. ¶ 17.) Their purchase decision was based in part on the safety and reliability of the oven. (*Id.* ¶ 21.)

Their oven has a "High Temp Self-Cleaning Cycle" feature ("self-cleaning feature"). (*Id.* ¶ 18.) In essence, that feature "should produce high enough heat during the self-cleaning cycle to disintegrate excess debris while still maintaining all functional abilities afterwards." (*Id.* ¶ 37.) On or around January 9, 2015, Plaintiffs first utilized the self-cleaning feature. (*Id.* ¶ 23.) During the self-cleaning cycle, the oven's glass door cracked and required replacement at a cost of $119. (*Id.* ¶ 24.) At the time, Plaintiffs believed that the incident was isolated. (*Id.* ¶ 24.) However, on or around July 17, 2016,

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for March 20, 2017, at 1:30 p.m. is hereby vacated and off calendar.

[2] Plaintiffs allege, and Whirlpool does not dispute, that Whirlpool produces ovens under the brands "Whirlpool," "KitchenAid," "Maytag," "Kenmore," and "Ikea." (Compl. ¶¶ 20, 42(b).) The proposed class is defined to include owners of certain Whirlpool or KitchenAid ovens. (*See id.* ¶ 55.)

Plaintiffs attempted to utilize the self-cleaning feature a second time; during the cycle, "the oven emitted an extreme burning smell." (*Id.* ¶ 25.) Plaintiffs then tried to prematurely terminate the cycle but the oven controls were unresponsive and the oven door remained locked. (*Id.* ¶ 25.) "At the completion of the self-cleaning cycle, the oven door remained locked and the oven lights and controls were inoperative." (*Id.* ¶ 25.) Their oven allegedly remains without power and requires additional repairs or replacement to regain functionality. (*Id.* ¶ 25.)

Plaintiffs allege that their experience with the self-cleaning feature exemplifies a design defect "due to the use of inappropriate and inadequate heat-resistant and heat-regulating internal components, . . . [Whirlpool's ovens'] thermostat, thermal fuses, control panel, motherboard, door glass, door latch, and/or other internal components short-circuit, overheat, or otherwise break during normal operation" of the self-cleaning feature. (*Id.* ¶ 2; *see also id.* ¶ 3 ("The defect is caused by Defendant's failure to equip the Class Ovens with appropriate heat resistant insulation, properly functioning thermostats, thermo-regulators, and cooling fans, and adequate heat-resistant internal components that can withstand the extreme heat produced during" the self-cleaning cycle.).)

This defect, Plaintiffs allege, has existed since at least January 2000. (*See id.* ¶ 4.) However, Whirlpool has failed to disclose this defect to consumers even though it "causes unsafe conditions, including[] oven failure, broken oven glass, unstable electrical circuits, and an increased risk of fire." (*Id.* ¶¶ 40, 41.)

In January 2011, Whirlpool issued a Technical Service Pointer ("TSP"), No. 4317445C-A for Whirlpool and KitchenAid Built-In Single and Double Ovens for customer complaints that their ovens stop during or do not operate after a self-clean cycle. (*Id.* ¶ 46.) "Whirlpool stated that the affected ovens' thermostat was

unintentionally exposed to hot air or power interruption during the self-clean cycle and instructed service technicians to replace the rear oven thermostat and blower assembly. (*Id.* ¶ 46.)

In September 2012, Whirlpool issued TSP No. W10540280 advising its service departments that KitchenAid self-cleaning wall ovens were "experiencing issues with the door latch assembly becoming deformed during the self-clean cycle. Whirlpool stated that 'hot air could flow around the Glass Door Liner and deform the light switch activation lever' and further instructed service technicians to replace the glass door liner of the ovens." (*Id.* ¶ 47.)

Plaintiff's complaint includes thirty eight consumer complaints culled from ConsumerAffairs.com. (*Id.* ¶ 42.) They also allege that Whirlpool's social media website, Consumer Reports, and other online complaint forums "demonstrate that the defect is widespread and dangerous and that it manifests without warning." (*Id.* ¶ 42.) The included complaints consistently report that the self-cleaning feature damage their ovens virtually without fail and from the first utilization of the feature. (*See id.* ¶ 42(a), (b), (c), (e), (f), (g), (i), (j), (l), (n), (o), (q), (r), (t), (u), (v), (w), (x), (y), (z), (aa), (bb), (cc), (dd), (ee), (ff), (gg), (hh), (ii), (jj), (kk), (ll).) When the complaints include descriptions of interactions with Whirlpool or service technicians, they are reported as recognizing the extent and consistency of the problem. (*See id.* ¶ 42(f) ("The parts lady recommended NOT using the self-cleaning for this oven."), (k) ("I thought [the Whirlpool customer service agent] was going to offer at least a repair considering by her own admission this same problem with my control panel of my double oven happened just last May (dead for the third time)."), (m) ("I have since found out that Whirlpool has had so many problems with this model—they have quit making it. The repair man says Whirlpool can't make the control panels fast enough to keep up with all the repairs."), (n) ("When my son in law called around for the part he was told 'good luck, that part is so

faulty that Whirlpool can not keep up with the replacement demand.'"), (q) ("The technician suggested I no longer use the self cleaning feature since it will continue to melt the fuse wire."), (s) ("Their tech said self-clean feature should never be used."), (t) ("I called the repairman and he said that the thermal fuse would blow every time I tried to clean the oven, because of the way the oven was manufactured."), (dd) ("The third time they came out they informed me that it was getting too hot in the cleaning mode and the steam was going into the computer panel and melting the electrical wire. They also said I would no longer be under warranty and from now on it would be my issue."), (ee) ("The contractor (A&E) came to take a look at my oven and assumed that it was just thermal fuse. He was explaining that the oven does heat up and shut down. Probably after this repair, this will happen again."), (ll) ("The recommended service company from Whirlpool was A&E. The serviceman informed me that the thermostat is a continual problem in burning out if the temperature gets too high.").) Finally, multiple complaints include allegations that the oven's self-cleaning feature caused dangerous conditions. (*See id.* ¶ 42(h) (The feature "caused the stove to billow smoke out of the oven and encompass her entire home."), (r) ("Problem: oven catches fire while self-cleaning oven. . . . After running the self clean cycle for about 35 min, I noticed fire."), (z) ("Our throats and eyes were burning and it smelled more like plastic burning. . . . FOR HOURS it was horrible! The walls and the Terracotta tile floor were flaming hot!!!" ), (ee) ("The oven exhaust was hot and the panel control as well, (almost burned my hand)."), (ff) ("It has been on for 12 hours in clean mode. The door is locked. My home is full of smoke and even though I turned off the breaker so no power would go to it, it is still locked and hot two hours later. This is the second time this has happened. Not only is it a fire hazard, my walls are hot to the touch."), (ii) ("I finally decided to use the cleaning cycle in Oct. 10. It burned out the circuit board and something else. It was under warranty and repaired. I was afraid to use it again, but tried it yesterday, 12/27/2011. It smelled horrible, knocked the power out of the oven, and the door will not unlock.").)

Plaintiffs also allege that before they purchased their oven, "Whirlpool knew about the Self-Cleaning Defect through sources not available to consumers, including pre-release testing data, early consumer complaints about the Self-Cleaning Defects to Whirlpool and its service technicians, testing conducted in response to those complaints, high failure rates, and replacement part sales data, among other internal sources of aggregate information about the problem." (*Id.* ¶ 45.) The existence of the self-cleaning defect is allegedly a material fact; Plaintiffs "would not have purchased the Class Ovens equipped with the High Temp Self-Cleaning Cycles or would have paid less for them." (*Id.* ¶ 49.) Nevertheless, Whirlpool "actively concealed the existence and nature of the defect . . . at the time of purchase or repair and thereafter. (*Id.* ¶ 50.) In addition, "[w]hen consumers present the Class Ovens to an authorized Whirlpool representative for repair of the oven, rather than repair the problem under warranty, Whirlpool dealers conduct repairs that merely mask the defect, often replacing defective parts with equally defective parts." (*Id.* ¶ 52.)

Plaintiffs seek to bring this lawsuit as a class action, with the class defined as all "individuals in the United States who purchased any Whirlpool or KitchenAid Built-In Single, Double or Combo wall oven equipped with a High Temp Self-Cleaning Cycle." (*Id.* ¶ 55.) Subclasses are defined for class members who reside in California, class members who are consumers within the meaning of California Civil Code § 1761(d), and class members who purchased their ovens in California. (*Id.* ¶ 55.) As for relief, they seek a declaration that Whirlpool is financially responsible for notifying the class members about the defect, compensatory, exemplary, and statutory damages, an order enjoining further deceptive distribution and sales practices and compelling Whirlpool to issue a recall, disgorgement of ill-gotten profits or alternatively restitution, and attorneys' fees and costs. (*Id.* at Prayer for Relief.)

//

**III. LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). The district court may also consider additional facts in materials of which the district court may take judicial notice, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994), as well as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled in part on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citations and quotations omitted)). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the

complaint can possibly be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

**IV. DISCUSSION**

Whirlpool raises numerous arguments in favor of dismissal. (*See* Mot.) The Court considers each in turn.

**A. Implied Warranty Causes of Action**

Plaintiffs' third cause of action alleges violation of the Song-Beverly Consumer Warranty Act, California Civil Code §§ 1792, 1791.1. (Compl. ¶¶ 93–101.) Section 1792 states that "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Section 1791.1 delineates the implied warranty of merchantability as warranting that the consumer goods, *inter alia*, are "fit for the ordinary purposes for which such goods are used." Cal. Civ. Code § 1791(a)(2). Plaintiffs' fourth cause of action alleges violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* (*Id.* ¶¶ 102–13.) Specifically, Plaintiffs allege that the class ovens violated Whirlpool's implied warranty that, *inter alia*, the ovens were "safe and reliable for normal use" and that they "would be fit for their intended use." (*Id.* ¶ 107.) Their Magnuson-Moss Warranty Act claim is predicated on their Song-Beverly Act claim. (Dkt. 21 [hereinafter "Opp."] at 10 (citing *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008)); *see also* Mot. at 3–6 (Whirlpool's arguments do not differentiate Magnuson-Moss from its Song-Beverly arguments).)

Whirlpool presents two grounds on which Plaintiffs' implied warranty claims fail. First, it argues that because Plaintiffs' first use of the self-cleaning feature was on

January 9, 2015, sixteen months after their purchase on September 10, 2013, their defect did not manifest within the one-year durational limit on the California implied warranty of merchantability. (Mot. at 4–5.) In California, the implied warranty of merchantability extends for one year if the express warranty that accompanied the goods lasts one year or more. *See* Cal. Civ. Code § 1791.1(c). The parties do not dispute that Whirlpool's express warranty extends for one year or more. (*See* Mot. at 4; Opp. at 5–6.) However, the Ninth Circuit has clearly adopted the rule articulated by the California Court of Appeal that Section 1791.1 does not require that the purchaser discover a latent defect within the one year durational period as long as the defect was present during the durational period. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1222 (9th Cir. 2015) (quoting *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297 (2009)). Indeed, the Complaint explicitly alleges that the defect was "inherent" in their oven "at the time of sale," (Compl. ¶ 39), and that is the plausible inference from the fact that the defect manifested the *first* time Plaintiffs used the self-cleaning feature, (*id.* ¶ 23). It is also supported by multiple consumer complaints stating that the first time they used the self-cleaning feature, within a year of purchase, the defect manifested. (*See id.* ¶ 42(a), (o), (w), (y), (ee), (ii).) Accordingly, Plaintiffs' complaint sufficiently alleges a defect within the duration allowed by California Civil Code § 1791.1(c).

Second, Whirlpool argues that any self-cleaning defect did not render the oven unfit for its ordinary purpose, which it argues is cooking food. (Mot. at 5–6.) Whirlpool relies on the fact that Plaintiffs successfully cooked food for sixteen months, (*see* Compl. ¶ 23), and on a Northern District of California case, *Burdt v. Whirlpool Corp.*, No. C 15-01563 JSW, 2015 WL 4647929 (N.D. Cal. Aug. 5, 2015). In *Burdt*, the court held that one of the three oven racks dislodging from its guides and collapsing did not render the oven unmerchantable because the other two racks remained usable. (*Id.* at *1, *6 ("Plaintiff has only alleged a single instance of impaired use. Plaintiff can still use the allegedly defective product for its intended ordinary purpose in a safe manner by using

the two other racks in the oven.”).) *Burdt* is easily distinguishable. Unlike the number of racks in an oven and one rack’s durability, the presence or absence of a self-cleaning feature is a core attribute of an oven. The Court refuses to essentialize all ovens down to their lowest common denominator and their bare minimum functionality and, in so doing, gut California consumer protection law. The ability to self-clean is an ordinary purpose for which someone buys a self-cleaning oven. A systemic design defect that transforms self-cleaning functionality into a self-destruct mechanism renders an oven unmerchantable. *Cf. T & M Solar & Air Conditioning, Inc. v. Lennox Int’l Inc.*, 83 F. Supp. 3d 855, 878 (N.D. Cal. 2015) (holding that solar panels bought for their HVAC interface were not merchantable despite their ability to be used as solar panels with an electrical system interface).

Plaintiffs sufficiently allege a breach of the implied warranty of merchantability. Whirlpool’s motion to dismiss is DENIED as to Plaintiffs’ third and fourth causes of action.

### B. Consumer Protection Causes of Action

Plaintiffs’ first two causes of action allege that Whirlpool’s failure to disclose the defect constitutes actionable fraud under California’s Consumers Legal Remedies Act (“CLRA”) and Unfair Competition Law (“UCL”). (Compl. ¶¶ 62–92 (Cal. Civ. Code §§ 1750 *et seq.*; Cal. Bus. & Prof. Code §§ 17200 *et seq.*).) An obligation to disclose arises “(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; [or] (4) when the defendant makes partial representations but also suppresses some material fact.” *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007). Plaintiffs allege that Whirlpool’s duty arose from exclusive knowledge of and active concealment of material

facts. (*See* Compl. ¶¶ 44–53.) Whirlpool raises three challenges to the sufficiency of Plaintiffs' pleading.

1. Whirlpool argues that Plaintiffs' complaint does not allege facts sufficient to demonstrate that it had exclusive knowledge of material facts. (*See* Mot. at 7–9.) Plaintiff's complaint alleges exclusive knowledge at the time of sale via (1) the two TSPs, (2) the consumer complaints, and (3) sources not available to consumers, including "pre-release testing data, early consumer complaints, . . . testing conducted in response to those complaints, high failure rates, and replacement part sales data, among other internal sources of aggregate information." (Compl. ¶¶ 42, 45–47.) Whirlpool challenges the TSPs' relevance since they involve different oven models and different components. (Mot. at 7.) Even assuming the accuracy of that statement, (*compare* Compl. ¶ 17 (stating that Plaintiffs purchased a KitchenAid Single Wall Oven) *with id.* ¶¶ 46–47 (stating that the TSPs applied to KitchenAid Built-In Single Ovens and KitchenAid Self Clean Wall Ovens)), the underlying cause of the issues addressed by the TSPs—unintentional exposure of oven components to high temperatures during self-cleaning cycles—matches exactly Plaintiffs' alleged defect, (*see id.* ¶ 2 ("[T]he Class Ovens contain a design defect wherein, due to the use of inappropriate and inadequate heat-resistant and heat-regulating internal components, the Class Ovens' thermostat, thermal fuses, control panel, motherboard, door glass, door latch, and/or other internal components short-circuit, overheat, or otherwise break during normal operation of the High Temp Self-Cleaning Cycle.")). Therefore, the existence of the TSPs is a relevant fact supporting an inference that Whirlpool knew its ovens had a design defect that manifested during self-cleaning and was caused by inadequate heat resistance.

Whirlpool challenges the consumer complaints because only seven clearly reference Plaintiffs' model of oven and predate Plaintiffs' purchase. (Mot. at 8 (citing Compl. ¶ 42(dd)–(ff), (hh)–(jj), (ll)).) However, several additional complaints reference

equivalent failures predating Plaintiffs' purchase, (*see* Compl. ¶ 42(k), (w), (aa), (cc)), the volume of complaints from many different Whirlpool ovens supports the inference that the defect was not limited to Plaintiffs' model, and as discussed above many of the complaints indicate that the defect was well known. Therefore, the consumer complaints also support Whirlpool's presale knowledge of the defect.

Whirlpool challenges Plaintiffs' claim about sources not available to consumers as "speculative and vague." (Mot. at 9.) On the contrary, the consumer complaints repeatedly include statements supporting the inference that Whirlpool's internal data would have given it knowledge of the defect and its pervasive and inherent nature. (*See, e.g.*, Compl. ¶ 42(n) ("When my son in law called around for the part he was told 'good luck, that part is so faulty that Whirlpool can not keep up with the replacement demand.'").) The TSPs also support the inference that Whirlpool's internal sources gave it knowledge of the self-cleaning defect—without systemic, frequent complaints, Whirlpool would not have issued them. Therefore, contrary to Whirlpool's conclusory statements, Plaintiffs' Complaint contains specific, factual allegations supporting the inference that it knew, based on sources unavailable to the public, of the defect (*e.g.* number of orders of replacement parts).

2. Whirlpool argues that Plaintiffs have failed to sufficiently allege that it had a duty to disclose the defect. (Mot. at 10–11.) A duty to disclose arises, *inter alia*, when there is an affirmative misrepresentation. *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006), *as modified* (Nov. 8, 2006). Plaintiffs allege that they bought their oven in part because it purported to have self-cleaning capability. (*See* Compl. ¶¶ 21–22.) The fact that the oven allegedly was incapable of self-cleaning renders the claim of such capacity an affirmative misrepresentation. Accordingly, Plaintiffs have sufficiently alleged that Whirlpool had a duty to disclose the self-cleaning defect.

3. Whirlpool argues that Plaintiffs have failed to sufficiently allege "unlawful" or "unfair" business practices under the UCL. (Mot. at 11–13.) Whirlpool's argument as to the "unlawful" prong is predicated on its argument that its actions do not violate the Song-Beverly Act, the Magnuson-Moss Act, or the CLRA. (*See id.*; Dkt. 22 at 17.) As the Court rejects those arguments, Plaintiffs have sufficiently alleged an unlawful business practice. As for the "unfair" business practices prong, Whirlpool admits that if the Court finds a duty to disclose, the failure to do so constitutes an unfair business practice. (Mot. at 13; Dkt. 22 at 17.) Accordingly, having found a sufficiently-pled duty to disclose, the Court must also find that Plaintiffs have sufficiently alleged an unfair business practice. For all these reasons, Whirlpool's motion to dismiss Plaintiffs' first and second causes of action is DENIED.

**C. UNJUST ENRICHMENT**

Plaintiff's fifth cause of action is for unjust enrichment. (Compl. ¶¶ 114–19.) "The elements of unjust enrichment are 'receipt of a benefit and unjust retention of the benefit at the expense of another.' This equitable test does not turn merely on the transfer of money or other benefits from one party to another—it requires injustice." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1070 (9th Cir. 2014) (quoting *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000)); *see also Doe I v. Wal–Mart Stores, Inc.*, 572 F.3d 677, 684 (9th Cir. 2009) ("The fact that one person benefits another is not, by itself, sufficient to require restitution. The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is unjust for the person to retain it.") (quoting *First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657 (1992)).

The basis of Plaintiffs' claim is that Whirlpool's failure to disclose the defect caused class members to purchase ovens and pay for "repeated, high-cost repairs."

(Compl. ¶¶ 116–17.) That, they claim, has conferred an “unjust substantial benefit” on Whirlpool. (*Id.* ¶ 117.) Where, as here, Plaintiffs’ unjust enrichment claim relies on the same claim as their fraud claims, it does not constitute an independent cause of action in California. *See Smith v. Ford Motor Co.*, 462 F. App’x 660, 665 (9th Cir. 2011); *GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*, No. CV1504125MMMJEMX, 2015 WL 12731920, at *6 (C.D. Cal. Sept. 21, 2015) (“[F]ederal courts have consistently . . . held that California law does not recognize a cause of action for unjust enrichment so long as another cause of action is available that permits restitutionary damages.”). Plaintiffs’ argument to the contrary, that the UCL permits restitution, (Opp. at 19), actually supports dismissal. Because restitution is a remedy under Plaintiffs’ UCL cause of action, the class can fully recover without this redundant claim. As this cause of action is wholly duplicative, rather than grounded in the principles of equity, it is DISMISSED WITH PREJUDICE.

## V. CONCLUSION

For the foregoing reasons, Whirlpool’s motion to dismiss is DENIED IN SUBSTANTIAL PART. Plaintiffs’ fifth cause of action is DISMISSED WITH PREJUDICE.

DATED: March 7, 2017

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE